☑ Original ❏ D

CLERK'S OFFICE
A TRUE COPY

Jul 14, 2026

s/ JDH

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. **26-M-464 (SCD)** |
| information about the location of the cellular telephone assigned call number (414) 405-3917, (the "TARGET CELL PHONE"), via Verizon Wireless ("Service Provider"), a wireless telephone service provider headquartered in Bedminster, NJ. | ) ) ) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    7-28-26 _____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.    |X at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Honorable Stephen C. Dries _____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for **30** days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:    7-14-26. 2:15 pm _____    *Judge's signature*

City and state:    Milwaukee, WI _____    Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. Records and information associated with the cellular device assigned **(414)-405-3917,** (referred to herein and in Attachment B as "the **TARGET CELL PHONE**"), that is in the custody or control of Verizon Wireless (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey.

2. The TARGET CELL PHONE

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.** **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the Target Cellular Device for the time period January 1, 2023, to PRESENT:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

1

viii. All subscriber and extended subscriber information, handset identifiers, handset make and model, WI-FI MAC address, and account notes and memos pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

ix. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

x. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cellular Device, including:

(A) Call detail records and data reports with cell site location information for voice, SMS, MMS, and data connections, originating and destination IP addresses, and specialized location data including timing advance, RTT, LOCDBOR, or equivalent pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT")

b. Information associated with each communication to and from the TARGET CELL PHONE for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cellular Device will connect at the beginning and end of each communication as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cellular Device.

c. Information about the location of the Target Cellular Device for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

2

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cellular Device on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. Information about the target cellular device and its location, later referred to collectively as location information, includes all precision location information, E-911 Phase II data, GPS data, latitude-longitude data, specialized location data including timing advance, RTT, LOCDBOR, or equivalent, and real time cell site information for 30 days beginning from the date the warrant was issued. This includes initiating a signal to determine the location of the Target Cellular Device on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times directed by the government. The information includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the furnishing of information, facilities, technical assistance, and the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. §§ 3123-3124 by the service provider and the Federal Bureau of Investigation. Because the request for such location data may include use of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

iii. This pen register / trap and trace device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

d. The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance. Any service provider or representative who gains access to the information in this warrant shall not disclose

3

the existence of the warrant, order, or investigation to any third party unless ordered to do so by the Court. Additionally, the agency requests that all court orders and supporting documents, including the affidavit and search warrant, be sealed until further order by the Court.

e.  This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.  Information to be Seized by the Government

All information described above in Section I that will assist in the investigation of (414) 405-3917 (TARGET CELL PHONE) regarding violations of Title 18 U.S.C § 922(a)(1)(A) (engaging in a firearms business without a license), § 18 U.S.C § 544 (smuggling goods from the United States), 18 U.S.C. § 922(a)(9) (non-resident/non FFL received firearms), 18 U.S.C. § 933 (Trafficking of firearms) and 18 U.S.C. § 371 (conspiracy) between January 1, 2023, and the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

4

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
Jul 14, 2026
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>information about the location of the cellular telephone assigned call number (414) 405-3917, (the "TARGET CELL PHONE"), via Verizon Wireless ("Service Provider"), a wireless telephone service provider headquartered in Bedminster, NJ. | )<br>)<br>)<br>)<br>)<br>)   Case No.  26-M-464 (SCD) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 922(a)(1)(A), 18 U.S.C § 544, 18 U.S.C. § 922(a)(9), 18 U.S.C. § 933, and 18 U.S.C. § 371 | engaging in a firearms business without a license, smuggling goods from the United States, non-resident/non FFL received firearms, trafficking of firearms, and conspiracy |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Digitally signed by Alexis Krusic
DN: cn=Alexis Krusic, o=Bureau of ATF, ou=Milwaukee Field Office, email=alexis.krusic@atf.gov, c=US
Date: 2026.07.13 11:00:48 -05'00'

Alexis Krusic, ATF Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone *(specify reliable electronic means)*.

Date:  7-14-26

*Judge's signature*

City and state:   Milwaukee, WI                    Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

<u>**AFFIDAVIT IN SUPPORT OF**</u>
<u>**AN APPLICATION FOR A SEARCH WARRANT**</u>

I, Alexis Krusic, being first duly sworn, hereby depose and state as follows:

<u>**INTRODUCTION AND AGENT BACKGROUND**</u>

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (414) 405-3917 ("TARGET CELL PHONE"), via Verizon Wireless ("Service Provider"), a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey. The TARGET CELL PHONE is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

3.      Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the TARGET CELL PHONE.

4. I am a Task Force Officer (TFO) of the United States Justice Department, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee IV Field Office. As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

5. I am a Detective out of the Criminal Investigations Division with the Milwaukee County Sheriff's Office (MCSO) since 2020. I have been employed with MCSO since January of 2016 and an ATF TFO since March of 2020. My duties as a TFO with ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes. My duties with MCSO include investigating state violations of all criminal offenses.

6. I have completed approximately 920 hours/6 months of training at the Milwaukee County Sheriff's Office Training Academy through the Wisconsin Law Enforcement Standards Bureau. That training included various legal courses related to Constitutional Law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as: interviewing, surveillance, and evidence collection. I have read reports and worked with other officers/agents in complex investigations where I know that criminals put information on social media platforms to convey a message to groups of people and use their cellphones to communicate with individuals about the crime(s) they have committed to include before, during and after the incident.

7. I have been part of MCSO's Bomb Squad Unit since 2019 and have taken part in multiple explosive investigations and disposal of devices. I completed the Federal Bureau of Investigation's Hazardous Devices School, 5-week certification program, to become a certified bomb technician.

2

8. I received my bachelor's degree from the University of Wisconsin-Milwaukee in Criminal Justice with a specialty in Crime Analysis in 2015.

9. I have participated in firearm and drug trafficking investigations that involved the search of social media, and the seizure of computers, cellular phones, cameras, and other digital storage devices. The subsequent analysis of electronic data stored within these accounts or computers, cellular phones, cameras, and other digital storage devices, on many occasions, has provided evidence of the crimes being investigated and corroborated information already known or suspected by law enforcement.

10. As a Task Force Officer, I have also participated in the investigation of narcotics-related offenses, which have included the seizure of illegal drugs, weapons, United States currency, and other evidence of criminal activity. Through my training and experience, I have become aware of the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such.

11. I also know from training and experience that it is common for drug users, drug dealers, firearm traffickers, firearm possessors, and firearm straw purchasers to communicate by cellular phone through a variety of electronic media. The participants in these criminal organizations can use text (SMS) messaging, iMessage, phone calls, electronic mail, messaging applications, and various social media applications such as Facebook, Snapchat and Twitter to communicate about and organize criminal activity. Furthermore, based on my training and experience, I know that people who are prohibited from purchasing firearms (e.g., felons) will communicate with people who are authorized to purchase firearms by means of cellular telephone

3

to coordinate the purchase of firearms. Lastly, I know that it is common for straw purchasers to conduct research or purchase firearms by visiting gun sales websites, including via their phones.

12. I am personally involved in the investigation of the offenses discussed in this affidavit and I am familiar with all aspects of this investigation. The statements contained in this affidavit are based on my knowledge and, in part, information provided by law enforcement officers (LEOs), including (a) my personal knowledge and observations derived from participation in this investigation; (b) review of oral and written reports that I have received directly or indirectly from other LEOs about this and other investigations; (c) discussions I personally had concerning this investigation with other experienced investigators; (d) public records; (e) records obtained from law enforcement databases; (f) my training and experience as an ATF task force officer; and (g) the training and experience of other LEOs involved in this investigation.

13. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement persons, who have provided information to me during the course of their official duties and whom I consider to be truthful and reliable, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

14. Based on the circumstances described below, there is probable cause to believe that Christopher SIFUENTES (AKA Christopher LOZANO) (DOB xx/xx/1997), of Milwaukee, Wisconsin, has committed the crimes of Title 18 U.S.C § 922(a)(1)(A) (engaging in a firearms business without a license), § 18 U.S.C § 544 (smuggling goods from the United States), 18 U.S.C. § 922(a)(9) (non-resident/non FFL received firearms), 18 U.S.C. § 933 (Trafficking of firearms) and 18 U.S.C. § 371 (conspiracy), and there is probable cause to search the information described

4

in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

15. There is probable cause to believe that SIFUENTES is using the TARGET CELL PHONE. I know from training and experience that cell phone users normally have their cell telephones with them, so locating a user's cell phone will show that user's location. Finally, there is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses and locations of evidentiary value to the investigation of these crimes.

### PROBABLE CAUSE

16. An investigation into the below subjects began when Customs and Border Patrol (CBP)/Homeland Security Investigation (HSI) reported a firearms seizure that took place at the United States Port of Entry in Eagle Pass, Texas, where a transporter from Wisconsin was found with two (2) firearms and (4) magazines that were shipped by Christopher SIFUENTES (XX/XX/97).

### *ARREST AND STATEMENT OF DANIEL ACOSTA*

17. On April 16, 2023, Daniel Z ACOSTA (XX/XX/77) was stopped at the border while traveling into Mexico through the Eagle Pass, Texas, Port of Entry-Bridge 2. ACOSTA was driving a white Chevrolet Express 3500 van bearing Wisconsin license plate TX5815 with an attached trailer with Wisconsin license plate 15016.

18. During an inspection of ACOSTA's Van and Trailer by investigators, a Canik TP-9DA 9mm caliber pistol with serial number (SN) 21BJ09440 and a Walther P22 .22 caliber pistol with SN WA252381 along with four magazines were recovered. These items were concealed in a

5

radiant heater box and a piano speaker that was located within the trailer.

19. Pursuant to a Mirandized interview, ACOSTA explained that he was employed by 'Top Notch Movers' for the previous two years and delivers items to Mexico as a source of income. ACOSTA stated that he performed these deliveries as more of a reason to visit his family in Zacatecas, Mexico.

20. ACOSTA further stated that the delivery business (Top Notch Movers) belonged to his brother—Christopher SOLOMON. ACOSTA stated that he stops at multiple addresses provided by a person he knows as 'Christopher'—later identified as Christopher SIFUENTES— to collect items from people and then transfer those items to Mexico.

21. ACOSTA stated he contacts SIFUENTES's "uncle" known as "Felipe Vasquez" in Zacatecas, Mexico, who provides ACOSTA with an address via Whatsapp to drop off the items.

22. ACOSTA relayed at that point, he had made approximately four to five deliveries to Mexico for SIFUENTES within that year (2023).

23. ACOSTA provided the address for SIFUENTES as 3322 S 9th Place in the City and County of Milwaukee, WI, which investigators confirmed listed back to SIFUENTES.

24. ACOSTA stated that the telephone number for SIFUENTES was (414) 405-3917 (TARGET CELL PHONE). Through a Whatsapp subpoena for activity through February 2026, investigators confirmed that SIFUENTES' number (414) 405-3917 (TARGET CELL PHONE) was connected to a Whatsapp account with registered Gmail: christophersifuentes701@gmail.com.

25. ACOSTA told investigators that SIFUENTES was going to be flying into Zacatecas, Mexico, the following week from Wisconsin.

26. ACOSTA stated that the items (that the firearms were concealed in) were going to

6

be delivered to Vasquez.

27. ACOSTA provided the Whatsapp number for Vasquez as +52-498-103-0320.

28. Investigators identified a Whatsapp user with this number as "Felipe Longoria Carpintero" from Rio Grande, Zacatecas, Mexico.

29. ACOSTA stated that SIFUENTES told him on April 9, 2023, that there were two items at SIFUENTES's residence that he needed ACOSTA to bring to Zacatecas, Mexico. It should be noted that SIFUENTES made two firearm purchases on April 6, 2023 (see below).

30. ACOSTA arrived at SIFUENTES's residence, and SIFUENTES had the radiant heater box and the black luggage sitting outside of his residence. ACOSTA stated SIFUENTES had paid him $100 USD for transporting the items to Mexico.

*SIFUENTES' 2023 FIREARM PURCHASES AND RECOVERIES*

31. SIFUENTES made the following firearm purchases:

    i. April 6, 2023, from Fletcher Arms (Waukesha, WI): Walther P22 .22 caliber pistol with Serial Number (SN) WA252381. **Recovered** April 16, 2023 (10 days after purchase) on Texas Mexico border in trailer driven by Daniel ACOSTA (XX/XX/77) attempting to enter Mexico.

    ii. April 6, 2023, from Fletcher Arms (Waukesha, WI): Canik55 TP9-DA 9mm pistol with SN 21BJ09440. **Recovered** April 16, 2023 (10 days after purchase) on Texas Mexico border in trailer driven by Daniel ACOSTA (XX/XX/77) attempting to enter Mexico.

    iii. June 6, 2021, from Fletcher Arms (Waukesha, WI): Canik55 TP9SA 9mm pistol with SN 21AP05852.

7

        iv.   December 16, 2018, from Eisen Arms (West bend, WI): Ruger SR9B 9mm pistol with SN 338-06229.

        v.   December 16, 2018, from Eisen Arms (West bend, WI): HiPoint C9 9mm pistol with SN P10054308.

32. "Time to Crime" is a common term used to describe the last known legal possession of a firearm (often the date purchased from the authorized firearm dealer known as the Federal Firearms Licensee (FFL)) and the date of its first use in a crime (often the recovery date). Affiant knows from information published by the ATF's Violent Crime Analysis Branch (as of June 16, 2016) the national average time for a gun to be recovered in a crime by law enforcement after the original purchase date is 10.48 years (also known as "time to crime"). Additionally, the average time to crime of firearms is Wisconsin is 8.18 years. Affiant knows a short time to crime is a strong indication of firearms trafficking or "straw buying." The term "straw buying" is used to describe the purchase of a firearm knowing it will be provided to a second party. Affiant knows from training and experience that "straw buying" can be done to either provided firearms to a subject who cannot themselves legally buy firearms or to conceal the true owner of that firearm.

33. SIFUENTES' April 6, 2023, firearm purchases had a short time to crime.

34. Affiant knows from training and experience that purchases of the same make/model of a firearm can be a strong indication of firearms trafficking.

35. Investigators obtained/reviewed video from SIFUENTES's April 6, 2023 (transfer date) firearm purchases from Fletcher Arms. Investigators observed that on March 30, 2023, SIFUENTES' filled out a Firearms Transaction Record or ATF Form 4473. ATF Form 4473 is form required for the purchase of a firearm from an FFL. Among other requirements, firearm purchasers must truthfully identify their name, their residence, and provide a form of identification.

Firearm purchasers are also required to identify that they are buying the firearm for themselves and not another person. For his April 6, 2023, firearm purchases, SIFUENTES utilized his Wisconsin driver's license as a form of identification required to complete the form. SIFUENTES listed his current residence as 1819 E. Rusk Avenue, Milwaukee, WI 53207 and Social Security Number (SSN) as XXX-XX-5356.

36.     Under question 21.a., which asks, "Are you the actual transferee/buyer of the firearm(s) listed on this form and any continuation sheet(s) (ATF From 5300.9A)? Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.", SIFUENTES checked "Yes".

37.     Under question 21.b., which asks, "Do you intend to purchase or acquire any firearm listed on this form and any continuation sheet(s), or ammunition, for sale or other disposition to any person described in questions 21(c)-(m), or to a person described in question 21.n.1 who does not fall within a nonimmigrant alien exception?", SIFUENTES checked "No".

38.     Under question 21.c., which asks, "Do you intend to sell or otherwise dispose of any firearm listed on this form and any continuation sheet(s) or ammunition in furtherance of any felony or other offense punishable by imprisonment for a term of more than one year, a Federal crime of terrorism, or a drug trafficking offense?", SIFUENTES checked "No".

39.     Under questions 22 and 23, SIFUENTES signed and dated the ATF Form 4473 on March 30, 2023. By signing here, SIFUENTES certified all his answers on the form were "true, correct, and complete." Furthermore, SIFUENTES acknowledged he has read and understood the "Notices, Instructions, and Definitions on ATF Form 4473."

40.     Under Section D question 30 and 31, which must be completed personally by the

9

transferee/buyer if the transfer of the firearm(s) occurs on a different day from the date the transferee/buyer signed originally, SIFUENTES again signed and dated the form on April 6, 2023. By again signing here, SIFUENTES certified all his responses that were originally made on the form on March 30, 2023, were still true, correct, and complete.

41. It is important to note, on the first page of the ATF Form 4473, at the very top of the page, there is a warning which states, "WARNING: The information you provide will be used to determine whether you are prohibited by Federal or State Law from receiving a firearm, or whether Federal or State Law prohibits the sale or disposition of a firearm to you. Certain violations of the Gun Control Act, 18 U.S.C. §921 et. Seq., are punishable by up to 15 years imprisonment and/or up to a $250,000 fine. Any person who exports a firearm without a proper authorization from either the Department of Commerce or the Department of State, as applicable, is subject to a fine of not more than $1,000,000 and up to 20 years imprisonment." (Agent Notes: SA Ernst underlined the sentence above to highlight the exportation language which is applicable to SIFUENTES in this matter.)

42. SIFUENTES was also required to fill out a Wisconsin Department of Justice Firearms Dealer Notification (Handgun Transfers) Form in association with the purchase. The information provided on this form reflects the same information SIFUENTES provided on the ATF Form 4473. It is important to note in 2023, SIFUENTES provided his telephone number on this form as being (414) 405-3917 (TARGET CELL PHONE) and listed SIFUENTES's email address as christophersifuentes701@gmail.com.

43. A review of the ATF Form 4473s signed by SIFUENTES revealed that each time he answered "Yes" to question 11a which stated, "Are you the actual buyer/transferee of the firearm(s) listed on this form?"

10

44. On March 30, 2023, SIFUENTES filled out a firearm layaway with Fletcher Arms (Waukesha, WI) for a Canik TP-9 DA 9mm pistol with SN 21BJ09440 and Walther P22 .22 caliber pistol with SN WA252381 (transferred to him on April 6, 2023) and provided a name of Christopher SIFUENTES, address of 1819 E Rusk Avenue, Milwaukee, WI, phone number of (414) 405-4917 and email address of christophersifuentes701@gmail.com.

*SIFUENTES'S GUNBROKER ACCOUNT*

45. Pursuant to a Gunbroker subpoena for 2021 to 2026, SIFUENTES had two accounts. For the first account, he provided an email of christopherlozano34@icloud.com, the name Christopher Lozano, residing at 1571A S Pearl Street, Milwaukee, WI and phone number of (414) 405-3917 (TARGET CELL PHONE). For SIFUENTES' second account, he provided an email of christophersifuentes701@gmail.com, the name Christopher Sifuentes residing at 1819 E Rusk Avenue, Milwaukee, WI and phone number of (414) 405-3917 (TARGET CELL PHONE). SIFUENTES registered in 2019 and 2020 for these accounts.

*MIZAEL LOZANO FIREARM PURCHASES AND MEXICO RECOVERIES*

46. SIFUENTES' stepfather was identified as Mizael LOZANO (XX/XX/76) who resides at 1571 S Pearl St, Milwaukee, WI. LOZANO was identified pursuant to a CBP stop of SIFUENTES where he provided an emergency contact for his stepfather 'Michael LOZANO'. SIFUENTES' used this address on his Wisconsin Identification card in 2018, and that address was provided as documentation for a Passport.

47. Mizael LOZANO made the following firearm purchases:

    i. December 17, 2016, from Eisen Arms (West Bend, WI): HiPoint JCP .40 caliber pistol with SN: X7265113. **Recovered** September 8, 2022, in San Juan Del Rio, QT Mexico, via ATF E-Trace Form

11

T20220484804.

ii. November 12, 2008, from Badger Guns Inc. (West Milwaukee, WI): Taurus PT100 AFS 9mm pistol SN: STB74368. **<u>Recovered</u>** October 11, 2019, in Fresnillo, Zacatecas, Mexico, via ATF E-Trace form T20190362539.

iii. December 20, 2017, from Cabela's (Richfield, WI): Taurus PT111 G2 9mm pistol SN: TKY02255.

iv. December 20, 2017, from Cabela's (Richfield, WI): Taurus PT111 G2 9mm pistol SN: TKU25859.

v. February 26, 2018, from Dunham's (Franklin): Heritage MFG Rough Rider .22 caliber revolver SN: U77866.

vi. February 26, 2018, from Dunham's (Franklin): Heritage MFG Rough Rider .22 caliber revolver SN: V64604.

vii. April 12, 2023, from Fletcher Arms (Waukesha, WI): Anderson Manufacturing AM-15 multi-caliber receiver SN: 22030503.

viii. April 12, 2023, from Fletcher Arms (Waukesha, WI): Aero Precision LLC M5 multi-caliber receiver SN: US309554.

ix. December 16, 2025, from Fleet Farm (Muskego, WI): Beretta Pietro, S.P.A 80X Cheetah .380 caliber pistol SN: Y033873X.

x. December 16, 2025, from Fleet Farm (Muskego, WI): Beretta Pietro, S.P.A 80X Cheetah .380 caliber pistol SN: Y024131X.

48. LOZANO filled out a Wisconsin Department of Justice Firearms Dealer Notification (Handgun Transfers) Form in association with his April 12, 2023, purchase. The

12

information provided on this form reflects the same information LOZANO provided on ATF Form 4473. LOZANO provided his telephone number on this form as being 414-324-4747. The sales receipt/layaway form(s) associated with the purchase showed LOZANO listed his email address as mizaellozano33388@gmail.com.

49. A review of the ATF Form 4473s signed by LOZANO revealed that each time he answered "Yes" to question 11a which stated, "Are you the actual buyer/transferee of the firearm(s) listed on this form?"

50. Investigators believe that SIFUENTES, LOZANO, and ACOSTA are associates involved in criminal firearms trafficking.

51. Pursuant to a subpoena from Paypal, ACOSTA provided the following phone numbers: (608) 577-7188 and (608) 886-0312 on his accounts.

### *VERIZON ACCOUNT*

52. Pursuant to a Verizon subpoena, Affiant observed call records for (414) 405-3917 (TARGET CELL PHONE) with a timeframe of January 1, 2023, to January 29, 2026. The subscriber for this telephone number is Odalis CORRO ARCOS, who Affiant is aware is the mother of SIFUENTES' child. In July 2026, agents saw CORRO ARCOS entering SIFUENTES' residence located at 3322A S. 9th Place, Milwaukee. SIFUENTES' number (414) 405-3917 (TARGET CELL PHONE) was also identified as the number he provided on the Wisconsin Handgun Hotline forms while purchasing firearms in 2023. As of July 2026, CLEAR phone data shows (414) 405-3917 (TARGET CELL PHONE) connected to SIFUENTES.

### *TELEPHONE CONTACTS TO MEXICO*

53. SIFUENTES called two Mexican phone numbers a total of three times from this US number. Based on the area code of the phone numbers he communicated with, they were from

13

one of the following areas of Mexico (area code 400-499): Aguascalientes, Guanajuato, Hidalgo, Jalisco, Michoacán, Nuevo León, Querétaro, San Luis Potosí, Tamaulipas, Veracruz, or Zacatecas (where SIFUENTES frequents). It should be noted that SIFUENTES had multiple Mexican phone numbers linked to his Meta account.

54. Pursuant to a T-Mobile subpoena, Affiant observed call records for LOZANO with a timeframe of January 1, 2023, to January 29, 2026. LOZANO's phone number was identified as the number he provided on the Wisconsin Handgun Hotline forms while purchasing firearms. LOZANO's phone number was identified as (414) 324-4747.

55. While reviewing LOZANO's phone records, investigators observed LOZANO had communication with (414) 326-8284, (414) 301-0307 and (414) 326-7587 that all listed back to LOZANO via investigative databases.

56. LOZANO called 49 Mexican phone numbers a total of 606 times.

57. Pursuant to a Verizon subpoena, Affiant observed call records for ACOSTA with a timeframe of January 1, 2023, to January 29, 2026. ACOSTA's phone number was identified as (608)886-0312 pursuant to a Paypal subpoena. ACOSTA stated in his CBP interview that he communicated with SIFUENTES via Whatsapp.

58. ACOSTA called nine Mexican phone numbers a total of 40 times.

*TELEPHONE CONTACTS AMONG THE SUSPECTS*

59. Investigators also reviewed telephone contact records between January 1, 2023, to January 29, 2026, for LOZANO and the records showed LOZANO communicated with SIFUENTES 101 times, and ACOSTA once.

60. Investigators also reviewed telephone contact records between January 1, 2023, to January 29, 2026, for SIFUENTES and the records showed SIFUENTES communicated with

14

LOZANO nine times.

<em>BORDER CROSSINGS</em>

61. SIFUENTES traveled into Mexico 14 times between April 2022 and February 2026, and LOZANO traveled into Mexico 8 times between August 2022 and January 2026.

<em>SIFUENTES' GMAIL ACCOUNT</em>

62. Pursuant to a federal search warrant on SIFUENTES' Gmail account, the following worth noting was located.

63. From March 6, 2025, to December 12, 2025, there were multiple emails received from firearm or ammunition stores (Palmetto State Armory, Primary Arms, Midsouth Shooter's Supply, Bear Creek Arsenal, Fletcher Arms, Grabagun, etc.).

64. From April 16, 2022, to February 18, 2026, SIFUENTES received multiple emails regarding his itineraries to Mexico, to include rental car reservations in Mexico.

65. SIFUENTES received multiple emails regarding money transfers to subjects in Mexico via Boss Revolution Money Transfer Service:

    a. SIFUENTES made a payment May 1, 2023, to 'Felipe Longoria' for cash pickup with the listed address for Longoria of 'Santa Teresa, Rio Grande, Zacatecas, MX' and phone number of 52-498-103-0320 for $280.60 USD or 5001 MXN. It should be noted that during the interview of ACOSTA, he was to bring the items that were seized (firearms) to 'Felipe' and provided the above phone number for 'Felipe' in his interview. Case agents located a 'Felipe Longoria' associated to the Whatsapp number.

    b. In total, SIFUENTES sent 35 money transfers to subjects in Mexico, with the majority of the payments being the same amount in MXN amounts,

15

varying in USD (based on exchange rate) between April 2023 and April 2026.

    c.   SIFUENTES had emails for flight purchases between/around some of the money transfers to subjects in Mexico.

66.    SIFUENTES received an email that he used 'Ria Money Transfer' to send $759.96 USD or 13,000.03 MXN to 'Kevin' in November 2023.

67.    March 26, 2025, SIFUENTES received an email for a .300 caliber blackout upper barrel with charging handle had been shipped to his residence of **3322 S 9th Place, Milwaukee, WI**. The item was delivered on March 28, 2026.

68.    March 28, 2025, SIFUENTES received an email confirming his order of a 12-gauge shotgun and the item shipped April 1, 2026, to Eagle Sports Range (Cudahy, WI). Delivered April 3, 2025, to Eagle Sports Range.

69.    April 5, 2025, SIFUENTES received an email of a money transfer to a subject in Mexico for 1300 MXN ($64.36).

70.    On April 8, 2025, SIFUENTES received an email for a flight itinerary to leave Chicago O'Hare International Airport, traveling to Monterrey, Mexico via a one-way ticket and he was listed as the sole passenger.

71.    April 15, 2025, SIFUENTES received an email for a car rental confirmation for April 16-April 19, 2025, from Mariano Escobedo International Airport (Monterrey, Mexico).

72.    April 21, 2025, SIFUENTES received an email for a flight itinerary to leave Monterrey, MX to Chicago O'Hare April 23, 2025.

73.    April 22, 2025, SIFUENTES received an email from Boss Money Revolution for a money transfer he made to a subject in Mexico for 3555 MXN ($183.30 USD).

74. May 25, 2025, SIFUENTES received an email for his purchase of an AR15 lower to be shipped to Eagle Sports Range (Cudahy, WI). It was shipped on May 28, 2025.

75. June 3, 2025, SIFUENTES received an email that his order from 'Ammunition Depot' would be delivered to **3322 S 9th Place, Milwaukee, WI**.

76. June 6, 2025, SIFUENTES received an email from Boss Money Revolution for a money transfer he made to a subject in Mexico for 1300 MXN ($68.75 USD)

77. September 7, 2025, SIFUENTES received an email of an order for an ATI Alpha Maxx pistol that was to be shipped to Eagle Sports Range (Cudahy, WI). This was shipped September 15, 2025.

78. On December 11, 2025, SIFUENTES received an email confirming his order for a charging FDE upper Barrel rail shipped to him at **3322 S 9th Place, Milwaukee, WI**. The item was shipped December 15, 2025, and delivered December 18, 2025. On the same date, SIFUENTES received an email confirming his order of a SAR USA B6C pistol to be shipped to Eagle Sports Range (Cudahy, WI). This was shipped on December 17, 2025.

79. December 12, 2025, SIFUENTES received an email from Midsouth Shooter's confirming his order of [5] 123 grain boxes of ammunition to be shipped to **3322 S 9th Place, Milwaukee, WI**.

80. February 15, 2026, SIFUENTES received an email from Boss Money Revolution for a money transfer he made to a subject in Mexico for 9600 MXN ($563.05 USD).

81. February 17, 2026, SIFUENTES received an email confirming a flight itinerary to leave Chicago Midway to Zacatecas, MX leaving February 19, 2026, returning February 24, 2026.

*SIFUENTES' 2025 FIREARM PURCHASES*

82. Affiant located the following SIFUENTES' firearm purchases that were shipped to

17

Eagle Sports FFL, located in Cudahy, WI:

    a. April 4, 2025 (online order from Sportsman's Outdoor March 28, 2025) purchase of a G-Force Arms GF-12AR 12-gauge shotgun, with serial number 33H24YD007823.

    b. May 30, 2025 (online order from Palmetto State Armory May 25, 2025) purchase of an Anderson Manufacturing Dark Horse .556 caliber rifle SN: 25041590 and a Palmetto State Armory PSA AR-15 complete lower receiver SN: SCNL255626.

    c. September 7, 2025 (online order from Palmetto State Armory) purchase of an ATI Alpha Maxx (FFL did not send an ATF Form 4473 for this purchase, but email for Sifuentes showed the order and shipping confirmation to Eagle Sports Range).

    d. September 18, 2025, purchase of American Tactical ATIGAX5567 MilC .556 caliber pistol SN: NX033912.

    e. December 19, 2025 (online order from Palmetto State Armory December 11, 2025) purchase of a SAR USA B6C 9mm pistol SN: Tl 102-25G00555 and a SAR USA SAR9 METE 9mm pistol SN: Tl 102-23CD23675.

*SIFUENTES' APPLE ACCOUNT*

83. Pursuant to an Apple account subpoena from January 2021 to January 2026, SIFUENTES had an Apple account linked to his name, email [christopherlozano34@icloud.com], phone number [414-405-3917 (TARGET CELL PHONE)], and address of **3322 S 9th Place, Milwaukee, WI**.

84. Phone messages were not backed up to his iCloud account via Apple, but media

was saved, and there were images of SIFUENTES, flight itineraries, firearms, and photos of SIFUENTES in Mexico.

85.     Affiant located a photo in the media of this Apple iCloud from Wisconsin Firearms and Transfers with SIFUENTES' name as the customer and located the following purchase made by SIFUENTES on October 21, 2022: Canik Mete SF 9mm pistol SN: 22BU01086 from Wisconsin Firearms and Transfers (FFL).

*SIFUENTES META [FACEBOOK/INSTAGRAM]*

86.     Pursuant to a Meta subpoena for activity through February 2026, SIFUENTES provided the following information for his Facebook account (Christopher.Lozano Profile ID 10001679288972): name of Christopher Lozano, emails of m.angas@hotmail.com, Christopher.lozano.35175@facebook.com, christophersifuentes701@gmail.com, and the following phone numbers (414) 405-3917 (TARGET CELL PHONE); 52-312-593-9513; +52-312-595-6507; +52-498-104-3935; +52-498-106-9193; +52-498-981-4929; and +52-498-151-0331.

87.     Investigators located the following Meta social media for SIFUENTES: (1) **Facebook:** Profile Name: "Christopher Lozano" (User ID: 100001679288972) https://www.facebook.com/christopher.lozano.351; and (2) **Instagram:** Profile Name: "christopher_lz_" (User ID: 674892615) https://www.instagram.com/christopher_lz_/

88.     Via SIFUENTES' Facebook profile, via current publicly available information, SIFUENTES listed that he was from Zacatecas, Mexico, despite being born in California.

89.     Via SIFUENTES' Instagram profile, via publicly available information, SIFUENTES posted a photo of himself in front of a vehicle with the location on the image tagged as being in Zacatecas, Mexico.

19

90.    On SIFUENTES's Meta accounts- Facebook [phone number] and Instagram [phone number and email] telephone number [414-405-3917] and email address [christophersifuentes701@gmail.com] associated with the Meta accounts, is connected to evidence of firearm purchases:

a. SIFUENTES provided his phone number [414-405-3917] on ATF form 4473 via Eisen Arms LLC [FFL] on December 16, 2018, to purchase a Ruger SR9B 9mm pistol SN: 338-06229 and a Hi-Point C9 9mm pistol SN: P10054308

b. SIFUENTES provided his phone number [414-405-3917] on ATF form 4473 via Fletcher Arms [FFL] on June 6, 2021, to purchase a Canik/Century Arms TP9SA 9mm pistol SN: 21AP05852

c. SIFUENTES provided his phone number [414-405-3917] and email address [christophersifuentes701@gmail.com] on the firearm purchase receipt via Wisconsin Firearms and Transfer [FFL] on October 24, 2022, to purchase a Canik Mete SF 9mm pistol SN: 22BU01086

d. SIFUENTES provided his email address [christophersifuentes701@gmail.com] on March 26, 2025, during an online purchase from Bear Creek Arsenal for a .300 blackout upper barrel that was shipped to his residence of **3322 S 9th Place, Milwaukee, WI**

e. SIFUENTES provided his email address [christophersifuentes701@gmail.com] on March 28, 2025, during an online purchase from Sportsman Outdoor Superstore for a G-Force Arms GF-12AR 12-gauge shotgun SN: 33H24YD007823 that was shipped to Eagle

20

Sports Range [FFL] for transfer

f. SIFUENTES provided his email address [christophersifuentes701@gmail.com] on May 25, 2025, during an online purchase from Palmetto State Armory for a Palmetto State Armory AR15 Complete Lower receiver SN: SCNL255626 that was shipped to Eagle Sports Range [FFL] for transfer

g. SIFUENTES provided his email address [christophersifuentes701@gmail.com] on September 7, 2025, during an online purchase from Palmetto State Armory for an ATI Alpha Maxx pistol that was shipped to Eagle Sports Range [FFL] for transfer, but SIFUENTES did not have this firearm transferred to him from the store

h. SIFUENTES provided his email address [christophersifuentes701@gmail.com] on December 11, 2025, during an online purchase from Bear Creek Arsenal for a 6.5 Grendel Right side charging FDE upper Barrel that was shipped to his residence of **3322 S 9th Place, Milwaukee, WI**

i. SIFUENTES provided his email address [christophersifuentes701@gmail.com] on December 11, 2025, during an online purchase from Palmetto State Armory for a SAR B6C 9mm pistol SN: T1102-25G00555 and a SAR USA Mete 9 9mm pistol SN: T1102-23CD23675 that was shipped to Eagle Sports Range [FFL] for transfer

j. Also on these Meta accounts, SIFUENTES has pictures and information regarding his location data, including his time in Mexico.

21

91.     Pursuant to a federal search warrant on SIFUENTES' Facebook account, affiant located in SIFUENTES's Facebook account multiple conversations, between 2022 and 2026, that appear to discuss firearms.

92.     On April 7, 2023, and April 22, 2023, SIFUENTES appears to have a conversation with Mizael LOZANO regarding the Walther P22 .22 caliber pistol, with serial number WA252381, and the Canik TP-9DA 9mm caliber pistol with serial number (SN) 21BJ09440, which were purchased by SIFUENTES on April 6, 2023, and recovery of those firearm in the possession of Daniel ACOSTA on April 16, 2023, at the Texas and Mexico border. The following partial conversations were translated from Spanish to English:

a.  April 7, 2023:
    i.  Sifuentes: I already saved the 22 to send it
    ii.  Sifuentes: I'm missing the 9
    iii.  Lozano: To always like that when the guy goes
    iv.  Sifuentes: That for the next purpose
    v.  Sifuentes: That isby wants a 22
    vi.  Lozano: Let's see if tomorrow I go and check or call them
    vii.  Sifuentes: Call them

b.  April 22, 2023:
    i.  Sifuentes: That things went down for him
    ii.  Sifuentes: And they passed them x X-rays
    iii.  Lozano: And how did they have that
    iv.  Lozano: And then?
    v.  Sifuentes: I think it came out on the x-rays
    vi.  Sifuentes: Well, I told him they belonged to a Comrade
    vii.  Lozano: And is it detained or what?
    viii.  Sifuentes: That he had brought me the box
    ix.  Sifuentes: They arrested him but released him
    x.  Sifuentes: They just confiscated his truck, I think
    xi.  Lozano: Did they take away the fair?
    xii.  Sifuentes: And they took his bags
    xiii.  Sifuentes: He didn't say anything like that

93.    On September 18, 2025, to March 16, 2026, SIFUENTES had the following Instagram conversation with "r_3spinoza" (Profile ID 1980301408). The following partial conversations were translated from Spanish to English:

    a.  September 18, 2025:
        i.  (SIFUENTES sent the following photo of a rifle to the subject, still in the box):



        ii.  r_3spinoza: You go all out

    b.  September 30, 2025:
        i.  SIFUENTES: Give me 230 for all
        ii.  r_3spinoza: What and what are they

    c.  March 16, 2026:
        i.  R_3spinoza: What brand is it
        ii.  SIFUENTES: Bearcreek
        iii.  SIFUENTES: 300 blackout
        iv.  SIFUENTES: AR15
        v.  R_3spinoza: The brand of the rifle which is the pistol
        vi.  R_3spinoza: On tan
        vii.  R_3spinoza: They're going to be there in your house

94.     On January 24, 2026, SIFUENTES had an Instagram conversation with "Biancarivaass" (Profile ID: 1473222271). The following partial conversation was translated from Spanish to English:

    a.  January 24, 2026:
        i.  (SIFUENTES sent the following video labeled "unified_message_1415097827065490")



        ii.  Biancarivaass: A lot of weapon?
       iii.  SIFUENTES: Haha I already have more 😅
       iv.  SIFUENTES: Well, I took some with me now that I went to Mexico 🤐
       v.  SIFUENTES: If one day they throw me in jail you're going to visit me eee
       vi.  SIFUENTES: ??
      vii.  Biancarivaass: Hahahahaha
     viii.  Biancarivaass: Obviously

*SIFUENTES' 2026 FIREARM PURCHASES*

95.     On June 16, 2026, Christopher SIFUENTES purchased four firearms from Prolific Arms FFL (West Allis, WI). SIFUENTES returned to the store on June 17, 2026, recertified his

ATF form 4473, and the following four firearms were transferred to him: (1) Adler Arms AD-9 9mm pistol SN: TH715-25U03740; (2) Mauser AK-47 Omega .22LR rifle SN: B151622; (3) Palmetto State Armory PA-15 Multi .556 caliber lower receiver SN: SCNL805514; and (4) Palmetto State Armory PA-15 Multi .556 caliber lower receiver SN: SCNL805507.

<em>CONCLUSION</em>

96.     It is unlawful for anyone who is not a federal firearm licensee ("FFL") to engage in the business of dealing in firearms, or to ship, transport, or receive or smuggle a firearm in interstate or foreign commerce. SIFUENTES does not have a federal firearm license that allows him to repetitively manufacture, sell, or export firearms.

97.     Your Affiant anticipates, based on the above information as well as upon training and experience, that the collection of location data for the **TARGET CELL PHONE** will provide valuable information aiding in the location of SIFUENTES and the crimes being investigated and the location of the information described in Attachment B will assist law enforcement in confirming SIFUENTES' activities, and location in order to prove SIFUENTES is involved in the illegal dealing of firearms and will assist Law Enforcement in executing future warrants related to SIFUENTES.

98.     Tracking SIFUENTES' movements and cellphone will allow investigators to identify potential stash houses, co-conspirators, firearm purchasing habits, the location of firearms, and firearm trafficking routes.

<strong><u>TECHINCAL CONTEXT</u></strong>

99.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate

25

information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

### CELL-SITE DATA

100. Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the **TARGET CELL PHONE**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

101. Based on my training and experience, I know that Verizon also can collect per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the

speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

## E-911 PHASE II / GPS LOCATION DATA

102. I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the **TARGET CELL PHONE**, including by initiating a signal to determine the location of the **TARGET CELL PHONE** on the Service Provider's network or with such other reference points as may be reasonably available.

## PEN-TRAP DATA

103. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile

27

Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

## SUBSCRIBER INFORMATION

104. Based on my training and experience, I know that wireless providers such as the Service Providers typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Providers typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cellular Devices' user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

105. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c). The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain

28

information in Attachment A for each communication to or from the Target Cellular Device, without geographic limit, for a period of thirty (30) days pursuant to 18 U.S.C. § 3123(c)(1).

106. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

107. I further request that the Court direct Verizon to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Verizon. I also request that the Court direct Verizon to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the TARGET CELL PHONE on Verizon's network or with such other reference points as may be reasonably available, and at

29

such intervals and times directed by the government. The government shall reasonably compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

108.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the TARGET CELL PHONE would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

109.    Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

## ATTACHMENT A

### Property to Be Searched

1.  Records and information associated with the cellular device assigned **(414)-405-3917,** (referred to herein and in Attachment B as "the **TARGET CELL PHONE**"), that is in the custody or control of Verizon Wireless (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey.

2.  The TARGET CELL PHONE

**ATTACHMENT B**

**Particular Things to be Seized**

**I.    Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the Target Cellular Device for the time period January 1, 2023, to PRESENT:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

1

viii. All subscriber and extended subscriber information, handset identifiers, handset make and model, WI-FI MAC address, and account notes and memos pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

ix. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

x. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cellular Device, including:

(A) Call detail records and data reports with cell site location information for voice, SMS, MMS, and data connections, originating and destination IP addresses, and specialized location data including timing advance, RTT, LOCDBOR, or equivalent pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT")

b. Information associated with each communication to and from the TARGET CELL PHONE for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cellular Device will connect at the beginning and end of each communication as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cellular Device.

c. Information about the location of the Target Cellular Device for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

2

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cellular Device on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. Information about the target cellular device and its location, later referred to collectively as location information, includes all precision location information, E-911 Phase II data, GPS data, latitude-longitude data, specialized location data including timing advance, RTT, LOCDBOR, or equivalent, and real time cell site information for 30 days beginning from the date the warrant was issued. This includes initiating a signal to determine the location of the Target Cellular Device on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times directed by the government. The information includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the furnishing of information, facilities, technical assistance, and the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. §§ 3123-3124 by the service provider and the Federal Bureau of Investigation. Because the request for such location data may include use of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

iii. This pen register / trap and trace device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

d. The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance. Any service provider or representative who gains access to the information in this warrant shall not disclose

3

the existence of the warrant, order, or investigation to any third party unless ordered to do so by the Court. Additionally, the agency requests that all court orders and supporting documents, including the affidavit and search warrant, be sealed until further order by the Court.

e. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that will assist in the investigation of (414) 405-3917 (TARGET CELL PHONE) regarding violations of Title 18 U.S.C § 922(a)(1)(A) (engaging in a firearms business without a license), § 18 U.S.C § 544 (smuggling goods from the United States), 18 U.S.C. § 922(a)(9) (non-resident/non FFL received firearms), 18 U.S.C. § 933 (Trafficking of firearms) and 18 U.S.C. § 371 (conspiracy) between January 1, 2023, and the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

4